# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**Leanny Sorelbis Hernandez Torrealba,**　　　　**Case No. 1:25CV01621**

　　　　　　　　　　**Petitioner,**

　　　　**-vs-**　　　　　　　　　　　　**JUDGE PAMELA A. BARKER**

**U.S. Department of Homeland Security,**
**et al.,**

　　　　　　　　　　　　　　　　**MEMORANDUM OPINION & ORDER**

　　　　　　　　**Respondents.**


On August 4, 2025, Petitioner Leanny Sorelbis Hernandez Torrealba ("Petitioner" or "Hernandez Torrealba") filed a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus ("Petition"), in which she asserts she is presently being detained by U.S. Immigration and Customs Enforcement ("ICE") under an allegedly unlawful expedited removal order.  (Doc. No. 1.)  Pursuant to an expedited briefing Order issued by this Court, Respondents United States Department of Homeland Security ("DHS"), Secretary of DHS Kristi Noem, ICE, and ICE Field Office Director Robert Lynch (hereinafter referred to collectively as "the Federal Respondents")[1] filed a Motion to Dismiss and Return of Writ on August 11, 2025.  (Doc. No. 6.)  Petitioner filed a Response on August 15, 2025.  (Doc. No. 7.)

For the following reasons, the Federal Respondents' Motion to Dismiss (Doc. No. 6) is granted as follows.  The Petition (Doc. No. 1) is dismissed without prejudice.

---

[1] The Petition also names Geauga County Sheriff Scott A. Hildenbrand as a Respondent in his official capacity. (Doc. No. 1.)  On August 6, 2025, Petitioner filed a Notice that she forwarded the Petition and this Court's expedited briefing Order to Mr. Hildenbrand.  (Doc. No. 4.)  As of the date of this Order, counsel has not yet entered an appearance on Mr. Hildenbrand's behalf, and Mr. Hildenbrand has not filed a Response to the Petition.

I.      **Background**[2]

    A.      **Factual Allegations**

Petitioner is a native of Venezuela. (Doc. No. 1 at ¶ 11.) She entered the United States on August 19, 2022 near Eagle Pass, Texas. (*Id*. at ¶ 29.) DHS arrested Petitioner on that date and detained her for two days.[3] (*Id*.) On August 21, 2022, DHS released Petitioner on her own recognizance pursuant to 8 U.S.C. § 1226(a). (*Id*.) *See also* Doc. No. 1-2 at PageID# 17 (Form I-220A "Order of Release on Recognizance"). On that same date, DHS issued a Form I-862 Notice to Appear which charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i),[4] i.e., as an alien present in the United States without being admitted or paroled. (Doc. No. 1 at ¶ 30; Doc. No. 1-3 at PageID# 19.) Petitioner was ordered to appear before an Immigration Judge in Cleveland on January 14, 2023. (Doc. No. 1-3 at PageID# 19.)

On August 2, 2023, Petitioner filed an application for asylum. (Doc. No. 1 at ¶ 31.) On May 27, 2025, the Immigration Judge ("IJ") conducted an "all-purpose hearing" in Petitioner's case. (Doc. No. 1-4 at PageID# 24.) Petitioner was not represented by counsel at this hearing.[5] (*Id*. at PageID# 23.) At the outset, the Government orally moved to dismiss on the grounds that "there's been a

---

[2] In setting forth the factual background, the Court relies on the factual allegations in the Petition and its attachments, as well as certain attachments to Petitioner's Reply to the Federal Respondents' Motion to Dismiss. (Doc. Nos. 1, 1-2 through 1-9; Doc. Nos. 7-4, 7-5.)

[3] The record contains a copy of a warrant for Petitioner's arrest dated August 21, 2022. (Doc. No. 7-4 at PageID# 135.) This warrant states that Petitioner "is within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the [INA] [i.e., 8 U.S.C. § 1226]." (*Id*.)

[4] Section 1182(a)(6)(A)(i) provides that: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[5] The IJ noted that, prior to the hearing, Petitioner's counsel had filed a motion to withdraw and that the IJ had granted that motion. (Doc. No. 1-4 at PageID# 25.)

2

change in circumstance such that it's no longer in our interest to keep forward with" removal proceedings under 8 U.S.C. § 1229a.  (*Id*. at PageID# 25.)  The Government explained that it intended to proceed instead with expedited removal under 8 U.S.C. § 1225.  (*Id*.)  The IJ granted the motion to dismiss without prejudice and informed Petitioner that she had a right to appeal his decision to the Board of Immigration Appeals ("BIA") within thirty (30) days.[6]  (*Id*. at PageID#s 26-27.)

When Petitioner left the courtroom, ICE apprehended and detained her.  (Doc. No. 1 at ¶ 33.) That same day, ICE officers created a Record of Sworn Statement (Form I-867A) from Petitioner. (*Id*. at ¶ 34.)  In that statement, Petitioner indicated that she entered the United States on August 18, 2022 in Texas and "turned [her]self into immigration."  (Doc. No. 1-5 at PageID# 31.) When asked if she had any documents that permitted her to legally reside in the U.S., Petitioner  indicated that she had a work permit, driver's license, and Real I.D.  (*Id*.)  Lastly, Petitioner indicated that she had a fear of persecution or torture should she be removed from the United States. (*Id*.)  Petitioner indicated that she deserted the Venezuelan police department because she "did not agree with the politics" and "was harassed because of her sexual preference in Venezuela."  (*Id.*) Petitioner alleges that she was not served with a copy of her Form I-867A, Record of Sworn Statement.  (Doc. No. 1 at ¶ 34.)

Also on May 27, 2025, ICE issued a Notice and Order of Expedited Removal (Form I-860). (Doc. No. 1 at ¶ 35; Doc. No. 1-6 at PageID# 36.)  The upper section of the Notice and Order of Expedited Removal reads as follows:

---

[6] Petitioner orally requested additional time to find a new attorney. The Government opposed the request.  The IJ denied Petitioner's request noting that "[I]t looks like you have been in proceedings since 2022.  You previously had a really good lawyer representing you... We have an application pending, and your attorney filed documentation with the Court. He did file a motion to withdraw some time ago reflecting that the two of you had some difficulties. And based upon all of that, ma'am, I'm going to grant the department's motion to dismiss without prejudice."  (Doc. No. 1-4 at PageID#s 26-27.)

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) **** (7)(A)(i)(1) *** of the Act, as amended, and therefore are subject to removal, in that:

1.  You are not a citizen or national of the United States;

2.  You are a native of VENEZUELA and a citizen of VENEZUELA;

3.  You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and National Act; and/or

4.  You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

(*Id.*)  This section of the Form is signed by an examining immigration officer.  (Doc. No. 1-6 at PageID# 36.)

The lower section of Notice and Order of Expedited Removal (entitled "Order of Removal under Section 235(b)(1) of the Act") calls for the signature of the immigration officer, as well as the signature of a supervisor. (*Id.*) Alternatively, the Order contains a box that can be checked, indicating that supervisory concurrence was obtained by telephone or other means. (*Id.*) This lower section of Petitioner's Notice and Order of Expedited Removal is blank, appearing as follows:

**ORDER OF REMOVAL**
**UNDER SECTION 235(b)(1) OF THE ACT**

**Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.**

| | |
|---|---|
| **Name and title of immigration officer (Print)** | **Signature of immigration officer Sign in ink)** |
| **Name and title of supervisor (Print)** | **Signature of supervisor, if available (Sign in ink)** |

☐  **Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).**

4

(*Id.*)  Lastly, the Notice and Order of Expedited Removal form contains a section entitled "Certificate of Service," which is intended to document that the Notice was personally served on the alien by the immigration officer.  (*Id.*)  The "Certificate of Service" section of Petitioner's Notice and Order of Expedited Removal is also blank. [7] (*Id.*)

On June 1, 2025, new counsel for Petitioner entered an appearance before ICE.  (Doc. No. 1 at ¶ 36; Doc. No. 1-7.)  Petitioner alleges that new counsel was not aware of the Notice and Order of Expedited Removal.  (Doc. No. 1 at ¶ 37.)  On June 18, 2025, new counsel filed a Motion to Reconsider with the IJ.  (Doc. No. 1-8 at PageID# 44.)  The following day, new counsel sent a letter to ICE advising that Petitioner intended to appeal the decision of the IJ to dismiss her standard removal proceedings under § 1229a.  (*Id.*)  On June 25, 2025, Petitioner (through new counsel) appealed the decision of the IJ dismissing her standard removal proceedings under § 1229a, to the BIA.  (Doc. No. 1 at ¶ 38.)  That appeal remains pending as of the date of this Order.

Also on June 25, 2025, an asylum officer conducted a credible fear interview with Petitioner. (*Id.* at ¶ 39.)  On July 1, 2025, the asylum officer determined that Petitioner did not have a credible fear of persecution in Venezuela.  (*Id.* at ¶ 40.)  Petitioner requested review by an IJ.  (*Id.*)  To the best of this Court's knowledge, Petitioner's request for IJ review remains pending as of the date of this Order.

---

[7] According to Petitioner, ICE did not serve the Record of Sworn Statement and Notice and Order of Expedited Removal (both of which were executed on May 27, 2025) on Petitioner and her counsel until July 1, 2025.  (*Id.* at ¶ 41.)

On July 17, 2025, an IJ conducted a custody redetermination (or bond) hearing and determined that he did not have jurisdiction to release Petitioner on bond.[8]  (*Id.* at ¶ 43.)  *See also* Doc. No. 1-9 at PageID# 54.  Petitioner appealed the IJ's bond decision to the BIA.  *See* Doc. No. 7-4 at PageID# 131 (noting that the IJ denied bond during the July 17, 2025 hearing and that "the respondent filed an appeal with the [BIA].")  Petitioner's appeal is still pending.[9]

**B.     Procedural History**

On August 4, 2025, Petitioner filed a habeas petition with this Court pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Therein, Petitioner asserts that her detention by ICE is unlawful because (1) "by law, expedited removal orders cannot issue to individuals, like Petitioner, who have been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" under 8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7); and (2) ICE "had no authority to issue the purported expedited removal order because [Petitioner] is in ongoing removal proceedings under 8 U.S.C. § 1229a (and a person cannot be in two types of removal proceedings at the same time)."  (*Id.* at PageID#1.)  Petitioner further argues that she was not "ordered removed"

---

[8] In his decision, the IJ explained as follows:  "The respondent's [i.e., Hernandez Torrealba's] detention status is governed by INA § 235(b) [i.e., 8 U.S.C. § 1225(b)].  ** As the [BIA] recently held in *Matter of Q. Li*, 29 I&N Dec. 66, 66, 2025 WL 1442892 (BIA 2025), an alien, such as the respondent, who is arrested and detained while arriving in the United States, 'whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) . . . and is ineligible for any subsequent release on bond under section 236(a).'" ** For these reasons, the Court lacks the authority to redetermine the respondent's detention status.  The respondent's counsel argues that the respondent is bondable pursuant to [INA] Section 236 [i.e., 8 U.S.C. § 1226] because she was released on her own recognizance pursuant to section 236 and received confirming documents. This does not change the fact that the respondent is legally an applicant for admission. The respondent did not present any statutory or case law to support her position. The original [Notice to Appear] was dismissed by the Court and it's apparent that the Respondent is being placed into expedited removal proceedings, which would also subject her detention and the court having no jurisdiction to set bond."  (Doc. No. 7-4 at PageID#s 132-133.)

[9] Petitioner has been detained for 90 days as of the date of this Order.  (Doc. No. 1 at ¶ 45.)  Petitioner has no criminal record.  (*Id.* at ¶ 44.)

because the Order of Expedited Removal issued by ICE "is not signed at all, let alone by a senior supervisory officer, as required by 8 C.F.R. § 253.3(b)(7). (*Id.* at PageID# 11-12.)

Petitioner asserts claims for violations of (1) 8 U.S.C. § 1225(b) and its implementing regulations, and the Administrative Procedure Act ("APA") (Counts I and II); and (2) her Fifth Amendment Right to Procedural Due Process (Count III). (*Id.* at PageID#s 11-13.) Petitioner requests that this Court "find that there is no lawful expedited removal order issued against [her] and, therefore, order DHS to issue a Notice to Appear placing her back in [standard] removal proceedings under 8 U.S.C. § 1229a before an [IJ] where she can continue to continue to pursue her claims for protection from removal" and be provided a hearing. (*Id.* at PageID#s 2, 13.) Petitioner further requests that the Court order her released from custody. (*Id.* at PageID#s 2, 14.) She argues that this Court has jurisdiction to grant her the above relief pursuant to 8 U.S.C. § 1252(e)(2), 28 U.S.C. § 2241, 28 U.S.C. § 1331, and the Suspension Clause of the United States Constitution, Article I, § 9, cl. 2. (*Id.* at PageID# 2.)

On August 5, 2025, this Court ordered Petitioner to immediately forward a copy of the Petition and its attachments, and the Court's briefing Order to each of the Respondents and to file a Notice on the docket confirming that she had done so. In addition, pursuant to 28 U.S.C. § 2243 and for good cause shown, the Court ordered (1) Respondents to respond to the Petition by no later than Monday, August 11, 2025; and (2) Petitioner to file a Reply by no later than Friday, August 15, 2025. *See* Non-Doc Order dated Aug. 5, 2025. On August 6, 2025, Petitioner filed a Notice on the docket confirming that she had forwarded copies of the Petition, its attachments, and the Court's briefing Order to each of the Respondents. (Doc. No. 4.)

On August 11, 2025, the Federal Respondents filed a Motion to Dismiss and Return of Writ. (Doc. No. 6.)  Therein, the Federal Respondents request that the Court dismiss the instant Petition for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, alternatively, for failure to exhaust administrative remedies.  (*Id.*)  Petitioner filed her Response (along with numerous Exhibits) on August 15, 2025.  (Doc. No. 7.)

## II.  Statutory Framework

### A.  Removal Proceedings—Standard vs. Expedited Removal

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), Congress established two main processes for removing aliens deemed "inadmissible" and, therefore, ineligible to remain in the United States.  The first is governed by 8 U.S.C. § 1229a and referred to as "standard removal" or "section 240" proceedings.  Standard removal proceedings involve an evidentiary hearing before an IJ.  *See* 8 U.S.C. § 1229a(a)(1), (b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses."); *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 108 (2020).  During that hearing, an alien may attempt to show that he or she should not be removed.  *Thuraissigiam*, 591 U.S. at 108.  "Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country."  *Id.* (citing 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 1240.11(c)).  Upon a decision by the IJ, either party may appeal to the BIA.  *See* 8 C.F.R. §§ 1240.15, 1003.1.  If the BIA upholds a standard removal order, the alien may then appeal that decision to a U.S. Court of Appeals.  *See* 8 U.S.C. § 1252.  During the time when standard removal proceedings are being litigated, "the alien will either be detained, at considerable expense, or allowed to reside in

this country, with the attendant risk that he or she may not later be found." *Thuraissigiam*, 591 U.S. at 108 (citing 8 U.S.C. § 1226(a)).

The IIRAIRA also includes a second, more streamlined form of proceeding called expedited removal. Expedited removal proceedings are governed by 8 U.S.C. § 1225. Compared to standard removal proceedings, "[e]xpedited removal lives up to its name." *Make the Rd. New York v. Wolf*, 962 F.3d 612, 619 (D.C. Cir. 2020). *See also Coalition for Humane Immigrant Rights v. Noem*, 2025 WL 2192986 at * 3 (D.D.C. Aug. 1, 2025). Under the expedited removal statute, "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival ...)" is deemed "an applicant for admission." 8 U.S.C. § 1225(a)(1).[10] An immigration officer (as opposed to an IJ) conducts the initial fact finding to determine if an alien is subject to expedited removal.[11] *Coalition for Humane Immigrant Rights*, 2025 WL 2192986 at * 3. "An applicant is subject to expedited removal if, as relevant here, the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not 'been physically present in the United

---

[10] When Petitioner herein entered the United States, aliens were treated as applicants for admission if they were "encountered within 14 days of entry without inspection and within 100 air miles of any U. S. international land border." "Designating Aliens for Expedited Removal," 69 Fed. Reg. 48879, 2004 WL 1776983 (2004) (hereinafter "the 2004 Designation"). *See also Thuraissigiam*, 591 U.S. at 108, fn 2.

[11] Section 235.3(b)(2)(i) explains (in relevant part) as follows: "In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I–860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien." 8 C.F.R. 235.3(b)(2)(i).

States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility'; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal." *Thuraissigiam,* 591 U.S. at 109 (quoting 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II)).

If an alien falls within the class of persons subject to expedited removal, an immigration "officer shall order the alien removed * * * without further hearing or review unless the alien indicates either an intention to apply for asylum * * * or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). *See also Thuraissigiam,* 591 U.S. at 109. "Absent such an indication, all that stands between that individual and removal is a paper review by the officer's supervisor." *Wolf*, 962 F.3d at 619. *See also* 8 C.F.R. § 235.3(b)(7) ("Any removal order entered by an examining immigration officer pursuant to section 235(b) of the Act must be reviewed and approved by the appropriate supervisor before the order is considered final.")

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii). "The point of this screening interview is to determine whether the applicant has a 'credible fear of persecution.'" *Thuraissigiam,* 591 U.S. at 109 (quoting 8 U.S.C. § 1225(b)(1)(B)(v)). "The applicant need not show that he or she is in fact eligible for asylum—a 'credible fear' equates to only a 'significant possibility' that the alien would be eligible." *Id*. "Thus, while eligibility ultimately requires a 'well-founded fear of persecution on account of,' among other things, 'race' or 'political opinion,' §§ 1101(a)(42)(A), 1158(b)(1)(A), all that an alien must show to avoid expedited removal is a 'credible fear.'" *Id*.

10

"If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam,* 591 U.S. at 110 (quoting 8 C.F.R. § 208.30(f)). *See also* 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. *Thuraissigiam,* 591 U.S. at 110. *See* 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an IJ, who can take further evidence and "shall make a *de novo* determination." *Thuraissigiam,* 591 U.S. at 110 (quoting 8 C.F.R. §§ 1003.42(c), (d)(1)). *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III). As the Supreme Court has explained, "[a]n alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear." *Thuraissigiam,* 591 U.S. at 110.

"Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release." *Id*. at 111. Applicants "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. *Thuraissigiam,* 591 U.S. at 111 (citing 8 U.S.C. § 1225(b)(1)(B)(ii)). *See also Jennings v. Rodriguez*, 138 S.Ct. 830, 836-837, 842 (2018).

**B.**     **Judicial Review of Expedited Removal Proceedings**

Here, Petitioner has challenged her expedited removal and detention by filing a habeas petition pursuant to 28 U.S.C. § 2241. Section § 1252(e)(2) limits the review that an alien in expedited removal may obtain via habeas. *Thuraissigiam,* 591 U.S. at 112. Specifically, Section

11

1252(e)(2) allows habeas review of three matters: (1) "whether the petitioner is an alien;" (2) "whether the petitioner was ordered removed;" and (3) whether the petitioner has already been granted entry as a lawful permanent resident, refugee, or asylee.  8 U.S.C. §§ 1252(e)(2)(A)–(C).  Moreover, "[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to [1] whether such an order in fact was issued and [2] whether it relates to the petitioner."  8 U.S.C. § 1252(e)(5).  If a removal order has not "in fact" been "issued," § 1252(e)(5), the court may order a removal hearing.  *See* 8 U.S.C. § 1252(e)(4)(B).

"A major objective of IIRIRA was to 'protec[t] the Executive's discretion' from undue interference by the courts; indeed, 'that can fairly be said to be the theme of the legislation.'" *Thuraissigiam,* 591 U.S. at 112 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999).  "In accordance with that aim, § 1252(e)(5) provides that '[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.'" *Id.*  "And '[n]otwithstanding' any other 'habeas corpus provision'—including 28 U.S.C. § 2241—'no court shall have jurisdiction to review' any other 'individual determination' or 'claim arising from or relating to the implementation or operation of an order of [expedited] removal.'" *Id.* (quoting 8 U.S.C. § 1252(a)(2)(A)(i)).

## III.  Analysis

In Count I of the Petition (entitled "Violation of 8 U.S.C. 1225(b), and implementing regulations, and [the APA]"), Petitioner asserts that ICE had no authority to issue an expedited removal order because she had been continuously present in the United States for more than two years when ICE determined (on May 27, 2025) that she is inadmissible under 8 U.S.C. § 1182(a)(7).  (Doc. No. 1 at ¶ 48.)  Petitioner further asserts that "[t]he purported expedited removal order issued by ICE

[] is not signed at all, let alone by a senior supervisory officer."  (*Id*. at ¶ 49.)  Petitioner argues that "the Court should find that no expedited removal order exists and, alternatively, [that] ICE had no authority to issue the order to Ms. Hernandez Torrealba and should order Respondents 'to require that [she] be provided a hearing in accordance with section 1229a of [8 U.S.C.]."  (*Id*. at ¶ 50) (quoting 8 U.S.C. § 1252(e)(4)).[12]

In Count II (also entitled "Violation of 8 U.S.C. § 1225(b), and implementing regulations, and [the APA]"), Petitioner states that she has appealed the dismissal of her standard removal proceedings under § 1229a to the BIA and, thus, her standard removal proceedings "are not final."  (*Id*. at ¶ 52.) Petitioner asserts that ICE had no authority to issue the purported expedited removal order under § 1225(b)(1) while her standard removal proceedings under § 1229e were ongoing.  (*Id*. at ¶ 53.)  She alleges that, because ICE "bypassed the lawful process it was required to follow before issuing an expedited removal order, namely termination of [standard] removal proceedings," it lacked the legal authority to make the § 1182(a)(7) determination of inadmissibility and to issue an expedited removal order.  (*Id*. at ¶ 54.)  Petitioner again requests that the Court order Respondents to require that she be provided a hearing in accordance with § 1229a.  (*Id*. at ¶ 55.)

Lastly, in Count III (entitled "Violation of Fifth Amendment Right to Due Process, Procedural Due Process"), Petitioner asserts that ICE "re-detained her in an arbitrary manner and not based on a rational and individualized determination of whether she is a safety or flight risk, in violation of due

---

[12] Section 1252(e)(4) provides as follows:  "**In any case where the court determines that the petitioner-- (A) is an alien who was not ordered removed under section 1225(b)(1) of this title**, or (B) has demonstrated by a preponderance of the evidence that the alien is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, **the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title**. Any alien who is provided a hearing under section 1229a of this title pursuant to this paragraph may thereafter obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1)."  8 U.S.C. § 1252(e)(4)(emphasis added).

process." (*Id.* at ¶ 60.) She alleges that, because "no circumstances have changed to command re-detention," Respondents have violated her right to procedural due process. (*Id.*) In her Prayer for Relief, Petitioner requests that the Court declare that her re-detention violates the Due Process Clause, and order Respondents to release her from custody and place her in standard removal proceedings under § 1229a. (*Id.* at PageID# 14.)

In their Motion to Dismiss and Return of Writ, the Federal Respondents first seek dismissal under Fed. R. Civ. P. 12(b)(1), arguing that this Court lacks subject matter jurisdiction over Petitioner's claims. (Doc. No. 6 at PageID#s 67-74.) Specifically, the Federal Respondents maintain this Court's jurisdiction to review expedited removal orders is "sharply limited" and that Petitioner's claims fall outside the scope of permissible review because they relate to DHS's decision to place her into expedited removal proceedings and the execution and/or validity of her removal proceedings -- rather than to "whether a removal order was in fact issued." (*Id.*) The Federal Respondents further argue that pursuant to the 2004 Designation,[13] Petitioner is, in fact, lawfully subject to expedited removal proceedings despite the fact that she has allegedly been continuously present in the United States for two years prior to her determination of inadmissibility. (*Id.* at PageID#s 69-70.) The Federal Respondents argue that this Court also lacks subject matter jurisdiction over Petitioner's Due Process claim and note that, in any event, Petitioner has received all the process she was due when

---

[13] As noted *supra*, in 2004, DHS designated aliens "who are physically present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of any U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter." Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48880, 2004 WL 1776983 (Aug. 11, 2004). Here, Petitioner entered the United States on August 19, 2022 near Eagle Pass, Texas and was arrested and detained by DHS the same day. The Federal Respondents argue that Eagle Pass, Texas is within 100 miles of the border, and that the 2004 Designation "establishes no temporal restriction on when expedited removal proceedings must begin." (Doc. No. 6 at PageID#s 66, 69-70.)

14

she was given a credible fear interview. (*Id*. at PageID#s 72-73.)   Lastly, the Federal Respondents argue that, although there is no statutory exhaustion requirement in this context, courts generally require exhaustion of administrative remedies "as a prudential matter." (*Id*. at PageID# 74.)  Noting that Petitioner has appealed the IJ's dismissal of her standard removal proceedings to the BIA, Respondents argue that "an administrative remedy is available to Petitioner that could provide her with the relief she seeks: a reversal of ICE's motion to dismiss." (*Id*.)  Thus, the Federal Respondents argue that the Petition should be dismissed for failure to exhaust administrative remedies. (*Id*.)

In response, Petitioner argues that this Court has jurisdiction over Counts One and Two under § 1252(e)(2) to determine whether she was "ordered removed" under 8 U.S.C. § 1225(b)(1). (Doc. No. 7.)  Petitioner asserts that she was not "ordered removed" because the purported expedited removal order (1) was not signed by the examining immigration officer, (2) did not include the name and title of a supervisor, (3) was not signed by the supervisor, (4) did not include any indication that supervisory concurrence was obtained by telephone or other means, and (5) was not signed by Petitioner. (*Id*. at PageID#s 87-89.)  Thus, Petitioner maintains that she "was detained in the absence of any final order of removal." (*Id*.)  Petitioner next asserts that she was not "ordered removed" because a determination of inadmissibility under § 1182(a)(6)(C) or (a)(7) was not made within two years of her continuous residence in the United States after her entry on August 19, 2022. (*Id*. at PageID#s 89-91.)  Petitioner then argues that the purported expedited removal does not "relate to" her because DHS "had no authority" to issue the purported expedited removal order under § 1225(b)(1) while she was in standard removal proceedings under § 1229a. (*Id.* at PageID#s 91-93.)  Petitioner insists that each of the above issues fall within the Court's jurisdiction because they do not relate to DHS's decision to place her in expedited removal or to whether the expedited removal order

is procedurally flawed but, rather, to whether a final expedited removal order was, in fact, issued against her in the first place; i.e., whether she was "ordered" removed.  (*Id*.)  Lastly, Petitioner asserts that this Court has jurisdiction over her Due Process claim under the Suspension Clause of the United States because (1) she has developed substantial connections with this country; and (2) Section 1252(e) does not provide an adequate and effective alternative to habeas review.  (*Id*. at PageID#s 94-96.)

Regarding the issue of administrative exhaustion, Petitioner argues that her "objective is release from custody and this objective is not available through reversal of her [standard] removal proceedings." (*Id*. at PageID#s 98-99.)  Although her appeal to the BIA of the IJ's denial of her bond request is still pending, Petitioner asserts that the exhaustion requirement should be excused because of the "high probability" that the BIA will deny her appeal, the "long processing times" for appeals of bond decisions to the BIA, and the "tremendous irreparable harm" that she will suffer from continued detention.  (*Id.*)

A.    **Exhaustion of Administrative Remedies**

The Court will first address the Federal Respondents' argument that the Petition should be dismissed without prejudice because Petitioner has failed to exhaust her administrative remedies.  The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself."  *Howell v. INS*, 72 F.3d 288, 291 (2nd Cir. 1995) (quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2nd Cir. 1992)) (internal quotation marks omitted).  *See also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2nd Cir. 2003).  "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and

16

promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry,* 329 F.3d at 56. *See also Anversa v. Partners Healthcare Sys., Inc*., 835 F.3d 167, 175-176 (1st Cir. 2016) (noting that exhaustion allows "an agency the first opportunity to apply [its] expertise" and "obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress.")

The requirement of administrative exhaustion can be either statutorily or judicially imposed as a matter of prudence. *See Beharry*, 329 F.3d at 56. *See also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional); *Brito v. Garland,* 22 F.4th 240, 255 (1st Cir. 2021) ("There are two species of exhaustion: statutory and common-law."); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Brito,* 22 F.4th at 255 (quoting *Anversa*, 835 F.3d at 174). *See also Puga*, 488 F.3d at 815. In other words, "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress," but "courts have more latitude in dealing with exhaustion questions when Congress has remained silent." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

Here, the parties do not direct this Court's attention to any statute that would require administrative exhaustion under the circumstances presented. Rather, the parties appear to agree (and the Court presumes) that the requirement of administrative exhaustion in the instant matter falls within this Court's discretion.[14] *See* Doc. No. 6 at PageID# 74; Doc. No. 7 at PageID# 99. The Court

---

[14] Although not cited by the parties, the Court notes that 8 U.S.C. § 1252(d) provides (in relevant part) that: "A court may review a final order of removal only if – (A) the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d). Here, all parties appear to agree that the there is no "final order of removal" because (1)

notes that the parties also fail to sufficiently identify, discuss, or direct this Court's attention to any binding authority regarding the appropriate standard for evaluating whether to require exhaustion as a prudential matter. And this Court is not aware of any Sixth Circuit precedent regarding the application of prudential exhaustion in this particular context.[15]  Several other Circuits, however, have examined prudential exhaustion in similar circumstances. In the absence of any meaningful argument or assistance from counsel regarding this issue, this Court will set forth and apply the Ninth Circuit's test for prudential exhaustion below.[16]

> Under the Ninth Circuit's test, courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga,* 488 F.3d at 815(citations omitted) (hereinafter "the *Puga* factors").  *See also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).  If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without

---

Petitioner's standard removal proceedings were dismissed and her appeal of the IJ's dismissal of those proceedings is still pending; and (2) Petitioner is still awaiting IJ review of her claim in her expedited removal proceedings that she has a credible fear of persecution in Venezuela.  Thus, the Court presumes that § 1252(d) does not apply herein at the present time.

[15] In a recent decision, another District Judge in the Northern District of Ohio recently applied "principles of prudential exhaustion" to dismiss a § 2241 petition without prejudice due to the Petitioner's failure to appeal an IJ's denial of bond to the BIA before filing his habeas petition.  *See Villalta v. Greene, et al.,* Case No. 4:25cv1594 (N.D. Ohio) (Calabrese, J.) (Doc. No. 3.)  That Court did, however, issue a Certificate of Appealability, noting that "[b]ecause of the absence of controlling precedent in this Circuit on the proper procedure on the facts and circumstances presented, the Court acknowledges that reasonable jur[ists] may disagree with the application of prudential exhaustion."  (*Id*. at PageID# 67.)

[16] As Judge Calabrese noted in his Opinion in *Villalta,* "the Sixth Circuit has endorsed [the Ninth Circuit's] procedure for challenging bond determinations, albeit in a short, unpublished order." *Villalta,* Case No. 4:25cv1594 (Doc. No. 3 at PageID# 66) (citing *Rabi v. Sessions*, No. 19-3249, 2018 U.S. App. Lexis 19661 (6th Cir. July 16, 2018) (citing *Leonardo v. Crawford,* 646 F.3d 1157 (9th Cir. 2011)).  *See also Shweika v. DHS*, 2015 WL 6541689 (E.D. Mich. Oct. 29, 2015) (applying Ninth Circuit's prudential exhaustion framework in immigration context).

prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

Nonetheless, even if the three *Puga* factors set forth above weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted). *See also Beharry*, 329 F.3d at 62 (finding that exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (quotation omitted).

In evaluating the *Puga* factors in the instant case, it is important to consider the specific relief that Petitioner is requesting. As noted above, Petitioner asks this Court to order Respondents to (1) place her in standard removal proceedings under § 1229a; (2) provide her a hearing in those proceedings; and (3) release her from custody. (Doc. No. 1.) With this requested relief in mind, it is also important to consider the current procedural status of her administrative proceedings. As discussed *supra*, on June 25, 2025, Petitioner appealed the IJ's decision to grant DHS's motion to dismiss her standard removal proceedings, to the BIA. (Doc. No. 1 at ¶ 38.) If the BIA were to reverse the dismissal of Petitioner's standard removal proceedings, it is undisputed that she would be placed back in standard removal proceedings under § 1229a and provided a hearing. Petitioner's appeal is pending. Concurrently, in her expedited removal proceedings, Petitioner requested IJ review of the asylum officer's determination that she does not have a credible fear of persecution in

Venezuela. [17]  (*Id*. at ¶ 40.)  If the IJ disagrees with the asylum officer and finds that Petitioner does have a credible fear of persecution, it is undisputed that Petitioner would be placed in standard removal proceedings under § 1229a, where she will be provided a hearing.  To the best of this Court's knowledge, Petitioner's request for IJ review is still pending.  And, lastly, on July 17, 2025, Petitioner appealed the IJ's decision that he does not have jurisdiction to grant bond.  (Doc. No. 7-4 at PageID# 131.)  If the BIA disagrees with the IJ, it is undisputed that Petitioner will be provided a full bond hearing.  This appeal is also still pending.

Based on the above, the Court finds that, on balance, the three *Puga* factors weigh in favor of requiring administrative exhaustion.  Beginning with the third factor, the Court finds that allowing the BIA to evaluate Petitioner's appeals regarding the dismissal of her standard removal proceedings and denial of bond would permit the agency to correct its own mistakes, if any, and preclude the need for judicial review if Petitioner is successful in her appeals.  Notably, if the BIA were to agree with Petitioner that the IJ improperly denied bond, she would be provided a new bond hearing where she could request release under § 1226.  Likewise, allowing the IJ to make a *de novo* determination of Petitioner's claim of credible fear of persecution may also preclude the need for judicial review herein.  As discussed above, if the IJ disagrees with the asylum officer, Petitioner will be placed in standard removal proceedings and provided a hearing—the very relief that she requests herein.  Further, if that were to occur, Petitioner would be removed entirely from expedited removal proceedings, thus providing another avenue to request release on bond.  The third factor, thus, weighs heavily in favor of requiring administrative exhaustion.

---

[17] Petitioner does not state the date on which she requested IJ review of the asylum officer's credible fear determination.

The Court also finds that the second *Puga* factor weighs in favor of requiring administrative exhaustion.  Petitioner has made clear that she doubts that either the BIA or the IJ will find in her favor and, further, that she believes that the administrative process will take too long.  The Court, thus, has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court.  This is particularly problematic given the important purposes served by exhaustion, including protecting the authority of administrative agencies and limiting interference in agency affairs.  *Beharry,* 329 F.3d at 56.

Lastly, although a somewhat closer call, the Court finds that the first *Puga* factor weighs in favor of requiring exhaustion.  As discussed above, Petitioner challenges her placement in expedited removal proceedings while she is still appealing the dismissal of her standard removal proceedings, as well as her continued detention.  The Court finds that any determination on these issues "turns on the interpretation and application of the governing removal regime" and that such review "should proceed before the Board of Immigration Appeals to 'apply its experience and expertise without judicial interference.'"  *Villalta,* Case No. 4:25cv1594 (Doc. No. 3 at PageID# 66) (quoting *Khalili v. Holder,* 557 F.3d 429, 435 (6th Cir. 2009) (abrogated on other grounds)).  Accordingly, and for all the reasons set forth above, the Court finds that the three *Puga* factors weigh in favor of requiring Petitioner to exhaust her administrative remedies.

As noted above, however, even if the three *Puga* factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Laing,* 370 F.3d at 1000.  Here,

Petitioner argues that this Court should exercise its discretion to waive the prudential exhaustion requirement "considering [the] high probability of denial of Petitioner's appeal of the immigration judge's denial of her release from custody on bond, long processing times of appeals of bond decisions to the BIA, [and] tremendous irreparable harm to Petitioner as she has already been detained for more than 80 days." (Doc. No. 7 at PageID# 99) (internal citations to Exhibits omitted).  Petitioner also appears to argue that administrative remedies are inadequate because her "objective is release from custody and this objective is not available through reversal of the dismissal of her [standard] removal proceedings." (*Id*. at PageID# 98.)

The Court understands and appreciates Petitioner's concerns.  Upon careful consideration, however, the Court declines to waive the administrative exhaustion requirement for the following reasons.  First, the Court finds that Petitioner has not demonstrated that her available administrative remedies are inadequate to secure her release from custody.   As an initial matter, the Court notes that Petitioner has failed to sufficiently explain (either in her Petition or her Response Brief) the statutory basis for her current detention.  In her Petition, Petitioner states that ICE "apprehended and detained" her after the IJ dismissed her standard removal proceedings.  (Doc. No. 1 at ¶ 33.)  Petitioner has not provided a copy of a warrant for this apprehension nor has she identified the specific statutory basis for her detention, but it appears that she was detained in connection with the initiation of expedited removal proceedings.  Indeed, as Petitioner correctly notes, § 1225(b)(1)(B)(iii)(IV) provides for the detention of aliens during the inspection and credible fear stages of *expedited* removal proceedings.  *See* 8 U.S.C. 1225(b)(1)(B)(iii)(IV).  However, Petitioner also filed a request for "bond redetermination" with the IJ, apparently in her *standard* removal proceedings.  (Doc. No. 7-4 at PageID# 131.)  In those proceedings, the IJ denied bond on the grounds that, pursuant to *Matter of*

22

*Q. Li*, 29 I&N Dec. 66, 2025 WL 1442892 (BIA May 15, 2025), Petitioner is subject to detention under § 1225(b) and, therefore, ineligible for release on bond.  (*Id.* at PageID# 133.)  The IJ further noted that Petitioner "is being placed into expedited removal proceedings, which would *also* subject her [to] detention and the court having no jurisdiction to set bond."  (*Id.*) (emphasis added).

Thus, although not entirely clear, it appears that Petitioner is being detained under two bases— both because she is currently in expedited removal proceedings (including IJ review of her credible fear determination) and because she was denied bond in her standard removal proceedings (which are not yet final due to Petitioner's appeal of the dismissal of those proceedings to the BIA). Assuming this to be the case, the Court finds that Petitioner has failed to demonstrate that she could not obtain release from custody (i.e., bond) through exhaustion of her administrative remedies. Specifically, if Petitioner is successful (in her expedited removal proceedings) in persuading the IJ that she has a credible fear of persecution, she will be placed back into standard removal proceedings, where she will receive a full hearing.  And if Petitioner is also successful in her appeal of the IJ's denial of bond in her standard removal proceedings, she will then receive a bond hearing and will be able to seek release on bond.  Accordingly, and in the marked absence of any sufficient explanation or briefing regarding this issue, the Court finds that Petitioner has failed to demonstrate that exhaustion should be excused because her available administrative remedies are inadequate to allow her to seek or obtain release.

Second, the Court finds that the allegedly "high probability of denial" of Petitioner's appeal of the IJ's bond decision does not weigh in favor of waiving exhaustion.  While Petitioner directs this Court's attention to an unreported BIA decision affirming an IJ's similar denial of bond in a different matter (Doc. No. 7-6), it is not certain how the BIA will rule on Petitioner's appeal given the particular

23

circumstances of her case, and it would be presumptuous of this Court to simply assume that the BIA

will rule against Petitioner. [18]  Second, courts have found that the alleged probability that a petitioner's

argument in administrative proceedings may fail is "not tantamount to stating that it would be futile

to raise it." *Beharry*, 329 F.3d at 62.  Indeed, to the contrary, "many of the purposes for requiring

exhaustion" may be served by permitting agency review in the first instance. *Id*.  Thus, the Court

finds that the allegedly "high probability" that her bond appeal to the BIA will fail is not a proper

basis for waiving the exhaustion requirement.

The Court also declines to waive the exhaustion requirement based on Petitioner's argument

that she is suffering, and will continue to suffer, irreparable harm from her continued allegedly

unlawful detention.  (Doc. No. 7 at PageID# 99.)  Petitioner notes that she has been detained since

May 27, 2025—a total of 90 days as of the date of this Order.   The IJ issued his written bond decision

on July 17, 2025, and noted in that decision that Petitioner had appealed his bond determination to

the BIA.  (Doc. No. 7-4 at PageID# 131.)  It is not clear when the BIA will address her bond appeal,

but Petitioner argues that there have been "long processing times" and provides examples of two

instances where BIA review of bond decisions did not occur until three and six months, respectively.

(Doc. No. 7-7.)  Thus, Petitioner argues that it is possible that the BIA may not rule on her bond

appeal (which was apparently filed on July 17, 2025) for another three to six months, i.e., until

October 2025 to January 2026.

---

[18] In finding that he lacked the authority to grant bond to Petitioner, the IJ relied on a recent BIA decision, *Matter of Q Li*, 29 I&N Dec. 66, 2025 WL 1442892 (BIA May 15, 2025).  (Doc. No. 7-4 at PageID# 133.) The Court notes that, unlike Petitioner herein, the alien in *Matter of Q Li* was arrested without a warrant.  *Matter of Q. Li,* 29 I&N at 67, 70 ("As **an alien arrested without a warrant while arriving in the United States**, the respondent's continued detention is mandated by section 235(b) of the INA, regardless of whether DHS elected to pursue expedited removal under section 235(b)(1) or place her directly in full removal proceedings pursuant to section 235(b)(2)(A).") (emphasis added).

The Court recognizes and appreciates Petitioner's concerns.  However, it is speculative to make any assumptions (based solely on the two examples provided by Petitioner herein) regarding when the BIA will resolve Petitioner's bond appeal.  And the Court has no information before it, of any kind, regarding how long it may take the IJ to complete his credible fear review in Petitioner's expedited removal proceedings.  In other words, there is insufficient information before the Court at this time to demonstrate that exhaustion of Petitioner's administrative remedies will be unduly prolonged (and, indeed, it is possible that the BIA and/or IJ's rulings may be imminent.)

Moreover, even assuming that there may be a period of additional delay associated with awaiting rulings from the BIA and/or IJ, the Court is not persuaded that the risk of irreparable harm to Petitioner outweighs the importance of requiring exhaustion under the circumstances presented. Specifically, the Court notes that, even if it were to (1) waive the exhaustion requirement in this case, (2) find that Petitioner was not "ordered removed" pursuant to § 1252(e)(2),[19] and (3) order that Petitioner be provided a hearing, the fact remains that Petitioner is also currently being detained under the IJ's bond decision in her standard removal proceedings.  Thus, it appears that the only vehicle for Petitioner to obtain immediate release from custody via habeas is through her procedural due process claim.  Upon careful consideration, however, the Court declines to reach this constitutional issue where Petitioner may very well obtain the relief she seeks via exhaustion of her administrative remedies.  *See Thuraissigiam*, 591 U.S. at 112 (noting that "a major objective of IIRIRA was to protect the Executive's discretion from undue interference by courts").

---

[19] If the Court had waived the exhaustion requirement, it would likely have determined that it had jurisdiction to consider Petitioner's argument that she was not "ordered removed" due to the lack of a supervisor's signature or concurrence on her Order of Expedited Removal.  *See, e.g., Dugdale v. U.S. Customs and Border Protection*, 88 F.Supp.3d 1, 6 (D.D.C. 2015); *Agarwal v. Lynch,* 610 F.Supp.3d 990, 999-1000 (E.D. Mich. 2022).

Accordingly, and for all of the above reasons, the Court finds that Petitioner must exhaust her administrative remedies before obtaining federal district court review of the claims set forth in her Petition. Thus, and because Petitioner has failed to demonstrate grounds for excusing exhaustion and does not request a stay, the Court dismisses the Petition without prejudice.

## IV.  Conclusion

For all the reasons set forth above, the Federal Respondents' Motion to Dismiss (Doc. No. 6) is granted as follows. The Petition (Doc. No. 1) is DISMISSED WITHOUT PREJUDICE.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Because of an absence of controlling precedent in this Circuit on the proper procedure on the facts and circumstances presented, the Court acknowledges that reasonable jurors may disagree with the application of prudential exhaustion herein.  For these reasons, the Court GRANTS a Certificate of Appealability on Counts One, Two, and Three of the Petition.

**IT IS SO ORDERED.**


Dated:  August 25, 2025                          _s/Pamela A. Barker_
                                                 PAMELA A. BARKER
                                                 UNITED STATES DISTRICT JUDGE